**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 26-CV-25321-MOORE/LETT**

WILL ROSENZWEIG,

Plaintiff,

v.

TODD BLANCHE, *et al*.,

Defendants.
_____________________________________/

**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION OR FAILURE TO STATE A CLAIM**

Defendants move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) because his claims are precluded by the Civil Service Reform Act of 1978 ("CSRA"), and alternatively as to Count III under Rule 12(b)(1) and 12(b)(6) because his allegations fail to state a plausible claim under the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 ("Privacy Act").

**INTRODUCTION**

Plaintiff challenges his removal from federal employment, alleging it was due in part to the efforts of social media influencers surfacing old blog posts critical of President Trump. The Complaint contains five counts, Count I (Violation of the First Amendment), Count II (Violation of the Separation of Powers), Count III (Violation of the Privacy Act), Count IV (Violation of the Due Process provisions of the Fifth Amendment), and Count V (Violation of the Administrative Procedures Act, 5 U.S.C. § 706). Plaintiff seeks damages, reinstatement, back-pay, and other declaratory and equitable remedies, but Plaintiff has also availed himself of the CSRA's statutory rights and remedies. Therein lies the rub. Each of his claims presuppose that the CSRA grants him

a constitutionally protected right to federal employment along with statutory procedural protections that private-sector at-will employees do not enjoy. Despite this, he contends here that he is not bound by the CSRA's jurisdiction-channeling provisions. His attempt to reap the CSRA's benefits yet avoid its jurisdictional limitations and procedural requirements must fail. Congress's intent is clear and dispositive: this Court lacks subject-matter jurisdiction over his claims.

When Congress passed the CSRA, it "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (cleaned up). A key part of that framework eliminated what had become standard suits by federal employees for injunctive relief, mandamus relief, and other remedies in federal district courts and replaced them with centralized, largely exclusive review of personnel claims by the Merit Systems Protection Board (MSPB). Its primary rationale was to correct what had evolved over many years into a "patchwork system" of disjointed, overlapping, and often conflicting statutes, regulations, and rules. *Id.* at 445. Under the CSRA's careful design, the MSPB adjudicates covered claims of improper personnel action in the first instance, and parties dissatisfied with the outcome of that adjudication may seek Article III review primarily in the United States Court of Appeals for the Federal Circuit.

Plaintiff, a former Department of Justice (DOJ) attorney who alleges he was unlawfully removed, has availed himself of that comprehensive scheme by appealing his removal to the MSPB, just as Congress intended. Yet he also filed suit in this Court and seeks relief from the same adverse personnel actions he simultaneously challenges in his MSPB appeal. He acknowledges that covered employees such as himself ordinarily "would be able to seek recourse through the Merit Systems Protection Board ("MSPB")." [Doc. 1 ¶ 102]. However, he contends that an "Article II firing" is a novel invention by the DOJ unaccounted for by the CSRA. *Id.*

Further, he argues that the MSPB is not functioning as intended and can't grant him the relief he seeks, and therefore any MSPB appeal would be futile. *Id.* ¶ 105, 109. Thus, despite already availing himself of his statutory rights under the CSRA, he alleges his claims are not subject to its preclusive channeling provisions and asks this Court to carve out exception for this suit.

No such exception exists here. The CSRA's review scheme has limited exceptions, but none applies to Plaintiff. His claims all challenge a CSRA-covered personnel action and cannot reverse Congress's decision to channel judicial review of his claims away from this Court.

Accordingly, the Court should dismiss Plaintiff's Complaint for lack of jurisdiction.

## BACKGROUND

### A. Statutory Background[1]

Before the CSRA was enacted in 1978, federal employment law consisted of an "outdated patchwork of statutes and rules built up over almost a century." *Fausto*, 484 U.S. at 444 (quoting S. Rep. No. 95-969, at 3 (1978)). There was no systematic scheme for reviewing adverse employment actions. Some employees were afforded administrative review by statute or executive order; others had no such right. Employees often sought judicial review in "district courts in all Circuits and the Court of Claims," through "various forms of action . . . including suits for mandamus, injunction, and declaratory judgment." *Id.* at 444-45 (citations omitted).

The CSRA replaced those "haphazard arrangements for administrative and judicial review of personnel action," *id.*, with "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (*quoting Fausto*, 484

[1] The Privacy Act is discussed in Argument Section II *infra*.

U.S. at 455). Relevant here, where a covered employee[2] challenges a covered employment action,[3] "Chapter 77 of the CSRA exhaustively details the system of review before the MSPB and the Federal Circuit." *Elgin*, 567 U.S. at 11 (*citing* 5 U.S.C. §§ 7701, 7703). The scheme permits evidentiary hearings adjudicated by MSPB-appointed administrative judges ("AJs") and authorizes pre-hearing discovery similar to federal district court proceedings. 5 U.S.C. §§ 7701, 1204(b)(1), (b)(2). If the employee prevails, the MSBP may order relief that includes reinstatement, back pay, and attorneys' fees. *Id.* § 7701(g); *Elgin*, 567 U.S. at 6.

An employee who is dissatisfied with the MSPB's decision is entitled to judicial review in the Federal Circuit, which "shall review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "obtained without procedures required by law, rule, or regulation having been followed," or "unsupported by substantial evidence." § 7703(a)(1), (c); *Elgin*, 567 U.S. at 6. Subject to limited exceptions not applicable here, the Federal Circuit has "exclusive jurisdiction" over appeals from a final decision of the MSPB. *Id.* (citing 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703(b)(1) (judicial review of an MSPB decision "shall be" in the Federal Circuit)).

This "regulates virtually every aspect of federal employment and 'prescribes in great detail the protections and remedies' applicable to adverse personnel actions, 'including the availability of administrative and judicial review.'" *Nyunt v. Chairman, Broad. Bd. of Governors,* 589 F.3d 445, 448 (D.C. Cir. 2009) (*quoting Fausto,* 484 U.S. at 443). It "provides the exclusive means for federal employees to obtain judicial review of adverse personnel actions even in circumstances

---

[2] The CSRA divides career employees into three main classifications: the Senior Executive Service (SES), 5 U.S.C. § 3132(a)(2); the competitive service, *id.* § 2102; and the excepted service, *id.* § 2103. *Elgin*, 567 U.S. at 5 n.1; *Fausto*, 484 U.S. at 441 n.1. Plaintiff was an excepted service employee. [Doc. 1 ¶ 21, 154].

[3] Reviewable actions include removal, suspension for more than 14 days, reduction in pay or grade, or furlough for 30 days or less. 5 U.S.C. § 7512.

where . . . the CSRA itself forecloses review." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 775 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated on other grounds*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025) (*citing Fausto,* 484 U.S. at 447).

**B. Factual Background**[4]

Plaintiff was an Assistant United States Attorney ("AUSA") in the U.S. Attorneys Office for the Southern District of Florida ("USAO SDFL") from September 2020 until September 25, 2025. [Doc. 1 ¶ 17]. He handled felony firearm possession, drug distribution, and other crimes in the Major Crimes Section of the USAO SDFL, before moving to the Economic and Environmental Crimes Section, and Healthcare Fraud Unit. *Id.* ¶ 18. Plaintiff alleges he successfully prosecuted numerous cases and earned awards, cash bonus, and outstanding reviews from the USAOSDFL. *Id.* ¶ 19.

In September 2025, Plaintiff was removed via email delivering a memorandum signed by then-Attorney General Pamela Bondi, citing Article II of the U.S. Constitution. *Id.* ¶¶ 43 – 45. In the preceding hours, a social media influencer followed by multiple DOJ current and former employees, including Ms. Bondi, began posting about him, identifying him as a "trump hater," linking to his old blog posts and calling for his removal. *Id.* ¶¶ 34 – 40. Plaintiff was told that Defendant Quinones and the Office of the Deputy Attorney General, led by Attorney General Todd Blanche, had discussed Plaintiff's blog posts earlier that day, after which the matter spread to Twitter. *Id.* ¶ 48.

The following day, another social media influencer claimed to have received news of Plaintiff's removal directly from the DOJ. *Id.* ¶ 63. The original social media influencer

[4] The factual allegations stated here are taken from the Complaint and are assumed to be true solely for purposes of this Motion.

commented, claiming credit for "getting [Plaintiff] fired." *Id.* ¶ 66. She then credited various DOJ officials with the firing by tagging them in a post. *Id.* ¶ 68.

Plaintiff contends he received no CSRA process, including pre-removal notice, time to respond, and a written decision. *Id.* ¶ 100. While he is a covered employee and does not dispute that a removal is a covered personnel action, Plaintiff claims that an "Article II" firing removes his case from the CSRA and any complaint filed with the MSPB would be futile due to the current conditions there. *Id.* ¶¶ 102, 103, 105. Nonetheless, he has appealed to the MSPB. *Id.*[5]

## LEGAL STANDARDS

The "first and fundamental" question for any court is that of subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env 't,* 523 U.S. 83, 94 (1998) (citation omitted). Thus, "resolving a merits issue while jurisdiction is in doubt 'carries the courts beyond the bounds of authorized judicial action.'" *See In re Papandreou,* 139 F.3d 247, 254-55 (D.C. Cir. 1998) (citation omitted). And the plaintiff bears the burden of establishing the court's jurisdiction. *See, e.g.,*

---

[5] Plaintiff alleges inaccurately that his appeal was dismissed "amidst the structural and procedural upheaval caused by Article II firings." *Id.* at n.5. *See Rosenzweig, Will v. Dep't of Just.*, No. AT-0752-26-0001-I-1, 2026 WL 2334432 (Aug. 5, 2026). Before the MSPB, Plaintiff's case was dismissed without prejudice to refiling pending the resolution of an *en banc* case before the Federal Circuit to resolve the constitutional issues surrounding Article II firings:

> On May 7, 2026, I notified the parties of my intent to dismiss this appeal without prejudice, subject to automatic refiling by the Board. I explained that this appeal presents substantially the same legal issues currently before the Federal Circuit in *Jarroch* and *Jackler*, including whether Article II of the Constitution authorizes the removal of an individual otherwise entitled to the protections of Chapter 75 without adherence to the procedures prescribed by statute. The agency agreed that dismissing this appeal is appropriate pending resolution of the Federal Circuit proceedings. The appellant does not oppose a dismissal without prejudice pending the Federal Circuit's ruling in *Jarroch* and *Jackler.*
>
> Moreover, allowing the Federal Circuit to resolve the legal issues presented in *Jarroch* and *Jackler* before further proceedings in this appeal will promote the consistent application of governing law and may eliminate the need for unnecessary litigation concerning questions that are presently under judicial review.

*Id.*

*Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action pursuant to Rule 12(b)(l). *See Steel Co.,* 523 U.S. at 94. Further, a court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) either facially or factually. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). "A facial attack challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id*. By contrast, a factual attack "challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id*.

"A complaint is subject to dismissal for failure to state a claim" under Fed. R. Civ. P. 12(b)(6) "if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock,* 549 U.S. 199, 215 (2007). The complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). A complaint falls short of this standard if the facts pled are "'merely consistent with' a defendant's liability" or if they do not "permit the court to infer more than the mere possibility of misconduct." *Id.* (citation omitted). "A district court can generally consider documents 'attached to a complaint or incorporated in the complaint by reference ... on a motion to dismiss under Rule 12(b)(b).'" *Zurich Am. Ins. Co. v. Amerisure Ins. Co.*, 2017 WL 366232, at *6 (S.D. Fla. Jan. 20, 2017) (*quoting Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014)).

## ARGUMENT

### I. The CSRA Precludes Jurisdiction Over Plaintiff's Constitutional and APA Claims.

The CSRA precludes Plaintiff's constitutional and APA claims. Plaintiff's Privacy Act suffers a similar fate, as will be demonstrated in Section II *infra*. "Within constitutional bounds,

Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Although 28 U.S.C. § 1331 generally confers the federal courts with broad jurisdiction to entertain "all civil actions arising under the Constitution, laws, or treaties of the United States," Congress, through its enactment of the CSRA, has affirmatively stripped district courts of § 1331 jurisdiction over claims regarding adverse personnel decisions such as those here. To determine whether a statutory scheme displaces § 1331 jurisdiction, a court considers two questions: first, "whether a preclusive intent is 'fairly discernible in the statutory scheme'"; and second, "whether the claims at issue 'are of the type Congress intended to be reviewed within'" that scheme. *New York v. Trump*, 181 F.4th 132, 137 (D.C. Cir. 2026) (*quoting Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

### *A. Congress Intended the CSRA to Provide the Exclusive Means of Review for Claims Arising out of Federal Employment.*

To determine the first question – whether it is 'fairly discernible' that Congress intended a statute to deprive district courts of jurisdiction – a court examines the statute's text, structure, and purpose. *Thunder Basin*, 501 U.S. at 207; *Fausto*, 484 U.S. at 443. Critically, "Congress need not expressly deem a statutory regime to be exclusive for it to satisfy step one. Rather, Congress's intent to displace district court jurisdiction may be 'implied' – for instance, by the comprehensive nature of the statutory system of review and Congress's purpose in enacting it." *Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023); *see also Elgin*, 567 U.S. at 8–10 (Congress need not be "explicit" when it divests district courts of § 1331 jurisdiction).

The Supreme Court has already recognized that legislative intent. *Elgin*, 567 U.S. at 12; *see also Fausto*, 484 U.S. at 450. The CSRA established an "'integrated scheme of administrative and judicial review' for aggrieved federal employees," that, aside from limited exceptions

inapplicable here, provides the exclusive means by which covered employees may challenge adverse employment actions. *Elgin*, 567 U.S. at 5, 13-14 (*quoting Fausto*, 484 U.S. at 445).

To remedy these problems, Congress "painstaking[ly] detail[ed]" the procedure by which covered employees may obtain review of personnel actions. *Id.* at 11-12. By doing so, Congress made clear its intent that "extra statutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Id.* at 11. This exclusive scheme has been applied to channel claims including constitutional *Bivens* claims, the APA, and the CSRA. *See also Stephens v. Dep't of Health & Hum. Servs.,* 901 F.2d 1571, 1575 (11th Cir. 1990); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998); *Ivey v. Paulson*, 222 F. App'x 815, 820 (11th Cir. 2007) ("Constitutional claims by federal employees are ordinarily preempted by the Act and must be addressed through the administrative procedures the CSRA establishes.") (*citing Bush v. Lucas,* 462 U.S. 367, 388–90, (1983)); *Hightower v. United States,* 205 F.Supp.2d 146, 156 (S.D.N.Y.2002) ("An employee's 'employment related claims alleging constitutional violations are "prohibited personnel actions" within the meaning of the CSRA.'") (*quoting Black v. Reno,* No. 99 Civ. 2704, 2000 WL 37991, at *8 (S.D.N.Y. Jan. 18, 2000)); *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983) ("While *Bush* involved only a first amendment claim, as compared with Gleason's multiple assertions of first, fourth, fifth and sixth amendment violations, the Supreme Court's careful analysis applies with equal force to this case.") (*citing Bush*).

If Plaintiff asks this Court to speculate whether Congress would alter the CSRA based on the current MSPB composition or disregard controlling Supreme Court precedent, this Court cannot do so. *See, e.g., State Oil v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents . . .."); *accord Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (same); *United States v. Hatter*, 532 U.S. 557, 567 (2001).

No Supreme Court precedent and nothing in the CSRA's supports Plaintiff's proposed exception. Under *Elgin*, "covered employees appealing covered agency actions" must "proceed exclusively through the statutory review scheme." 567 U.S. at 10. The Court thus rejected an "exception" for constitutional challenges to federal statutes because "[t]he availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue," not whether the employee is bringing a constitutional challenge to a federal statute. *Id.* at 12. Alleged conditions at the MSPB are irrelevant—statutory meaning "is fixed at the time of enactment." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Even if "conditions have changed since the Act was passed[,] . . . the statute has not." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 547 (1943).

### ***B. Plaintiff's Claims Are the Type that Congress Intended to Be Channeled Through the CSRA Framework.***

Plaintiff concedes that "[i]n a normal termination, [Plaintiff] would be able to seek recourse through the Merit Systems Protection Board." [Doc.1 ¶ 102]. Nevertheless, he contends that an exception should be carved out for his claims because an Article II firing is a "new invention" that the CSRA "does not account" for, and further his MSBP appeal is "futile." *Id.* ¶ 102, 105. He is not entitled to such an exception. He is entitled to review of his claim—including any novel issue it may raise—in the Federal Circuit. Again, the Supreme Court has decided that question: "The CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue*." *Elgin*, 567 U.S. at 18 (emphasis added). And "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," *Elgin*, 567 U.S. at 22. *See also* 5 U.S.C. § 7512. That should end the inquiry. An analysis of this case under *Thunder Basin* further reveals why.

In *Thunder Basin*, the Supreme Court addressed the question whether the statutory-review scheme in the Federal Mine Safety and Health Amendments of 1977 "prevents a district court from exercising subject-matter jurisdiction over a pre-enforcement challenge to the Act." 510 U.S. at 202. The Court held that it does. *Id.* at 202, 207. After determining that the statute evinced Congress' intent to allocate initial review of final agency action to an administrative body, the Court turned to the question whether the petitioner's claims were of the type that Congress intended to be reviewed within the statutory structure. In making this determination, the Court "identified three considerations designed to aid in that inquiry, commonly known now as the *Thunder Basin* factors." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023). Those factors are: (1) whether precluding district court review will "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral" to the statute's review provisions; and (3) whether the claim is "outside the agency's expertise." *Id.* (*citing Thunder Basin*, 510 U.S. at 212-13); *see also Elgin*, 567 U.S. at 15-16. Applying each of these factors here, Plaintiff's claims are clearly of the type that Congress intended to be channeled through the CSRA review structure.

**1. The CSRA Provides for Meaningful Judicial Review of Plaintiff's Claims.**

***a. Plaintiff will have an opportunity to present his claims to an Article III Court.***

Plaintiff contends that because the MSPB's "authority to resolve constitutional questions turns on difficult and often indeterminate distinctions between facial and as-applied challenges, as well as on whether the issue is framed as jurisdictional[,]" the MSPB is an inappropriate forum to resolve whether his Article II firing is legal and further he will not receive a meaningful review. [Doc. 1 ¶¶ 119, 121]. He is wrong. The Supreme Court rejected such a contention in *Elgin*, holding that "the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit[,]" which, the Court noted, "is

fully capable of providing meaningful review." *Id*. at 10. *See also Thunder Basin*, 510 U.S. at 215 (holding that even if the independent mining commission cannot adjudicate constitutional claims, "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals").

The plaintiffs in *Elgin* were former competitive service employees who were removed under a statute that prohibits agencies from employing individuals who "knowingly and willfully failed to register" for the Selective Service when required to do so. *Id. at 7*. The removed employees sued in district court, challenging the statute under the Equal Protection clause. *See id.* The district court held that it had jurisdiction because the MSPB "had no authority to determine the constitutionality of a federal statute." *Id.* at 8. The First Circuit reversed, holding that the CSRA provides a forum—the Federal Circuit—to adjudicate constitutional questions, and petitioners "were obliged to use it." *Id.* (*quoting Elgin v. United States*, 641 F.3d 6, 12-13 (1st Cir. 2011). The Supreme Court affirmed, rejecting plaintiffs' attempts to "carve out an exception to CSRA exclusivity for . . . constitutional challenges to federal statutes." 567 U.S. at 12.

This Court need not carve out an exception to the CSRA's exclusivity provisions to ensure that Plaintiff is not deprived of meaningful judicial review of the constitutional issues raised by his appeal. If he does not obtain relief before the MSPB, "the CSRA provides review in the Federal Circuit, an Article III court fully competent to adjudicate his claims." *Id.* at 17.

***b. The CSRA process is available to Plaintiff.***

Plaintiff's Complaint alleges that the MSPB is unavailable, as its "independence has been eroded through the removal of its members and the collapse of its bipartisan structure . . . .." [Doc. 1 ¶ 120]. As discussed above, delay and gridlock allegations cannot override the CSRA's comprehensive review framework to create district court jurisdiction where it does not exist. *See,*

*e.g.*, *Jolley v. United States*, 549 F. Supp. 3d 1, 6 (D.D.C. 2021) (even absent Board quorum "for over four years," there existed "no basis, statutory or otherwise, to say that a court's subject matter jurisdiction can turn on the presence or absence of political gridlock").

Likewise, Plaintiff's MSPB appeal is not "futile." [Doc. 1 ¶ 105]. Nor are allegations of futility sufficient to confer jurisdiction on this Court. First, the proposed dismissal without prejudice of Plaintiff's MSPB appeal does not foreclose "all meaningful judicial review" of his claims. The Office of Special Counsel ("OSC") stated that the dismissal was for procedural purposes pending determination of the government's appeal of the AJ's determination in *Jackler*'s and *Jaroch*'s appeals that their removals violated the CSRA and the Board lacked authority to determine the government's constitutional challenge to the CSRA. *See Rosenzweig, Will v. Dep't of Just.*, No. AT-0752-26-0001-I-1, 2026 WL 2334432 (Aug. 5, 2026). The OSC provided that if dismissed, the Board will reinstate Plaintiff's appeal in six months. *Id.* A procedural dismissal with the right to refile is permitted by 5 U.S.C § 1201.29. Plaintiff may be dissatisfied with the delay, but that dissatisfaction does not create district court jurisdiction. *See, e.g.*, *Jolley*, 549 F. Supp. 3d at 6. Indeed, that the MSPB is consolidating Article II removal cases and effectively staying those appeals while the common constitutional questions are adjudicated illustrates the very purpose behind the CSRA's exclusivity provisions: Congress was concerned about the "problems of parallel litigation, inconsistent decision-making, and duplicative judicial review of the same or similar matters." *Elgin*, 567 U.S. at 13-14. Plaintiff would have this Court exercise jurisdiction to determine the very same constitutional issues that are currently being appealed from an AJ to the Board (and then presumably to the Federal Circuit), potentially resulting in inconsistent results. This was the very result that Congress intended to avoid when it enacted the CSRA.

Next, Plaintiff contends that the MSPB's independence has been "eroded" because the DOJ's Office of Legal Counsel (OLC) issued an opinion regarding the MSPB's authority to adjudicate constitutional questions, and DOJ argued in the *Jackler* and *Jaroch* appeals that because OLC opinions reflect the legal position of the Executive Branch, they are generally viewed as providing binding interpretive guidance for executive agencies (to include the MSPB). [Doc.1 ¶ 115 - 117]. The OLC opinion concluded that the Board has jurisdiction to determine the constitutional challenge raised in appeals of Article II removals, but took no position on the merits of the Agency's constitutional arguments or any other merits arguments in any of the underlying disputes. But even if the Board follows the guidance in the OLC opinion, that guidance merely reflects OLC's interpretation of existing law, and Plaintiff will have the opportunity not only to challenge his removal but also to contest the legal basis of any final Board decision before the Federal Circuit.

Moreover, *Elgin* forecloses this argument too. Noting that the MSBP "has repeatedly refused to pass upon the constitutionality of legislation," the Court reasoned that "[w]e do not, and need not, decide whether the MSPB's view of its power is correct, or whether the oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction," as "that issue" could be "meaningfully addressed in the Court of Appeals." 560 U.S. at 17 (*citing Thunder Basin*, 510 U.S. at 215).

**2. Plaintiff's Claims Fall Squarely Within the CSRA's Review Provisions.**

Far from being "wholly collateral," Plaintiff's claims are at the very foundation of what the CSRA was intended to address. Plaintiff's expectation that the government may argue that those statutory protections are unconstitutional to the extent that they infringe on the Executive's powers under Article II does not render his underlying claim "collateral" to the purposes of the

CSRA's exclusive review framework. He is a covered employee under the CSRA, and his removal represents a covered employment action (as well as a statutorily defined adverse action appealable to the MSPB as of right). His challenge to his removal must therefore be brought before the MSPB, as the CSRA's exclusivity "does not turn on the constitutional nature of an employee's claim, but rather on the ***type of employee and the challenged employment action***." *Elgin*, 510 U.S. at 15 (emphasis added). Rejecting the petitioners' arguments that their constitutional challenge was "wholly collateral" because it had "nothing to do with the types of day-to-day personnel action adjudicated by the MSPB," the *Elgin* Court held that the constitutional claims were "the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 22. Here, too, where Plaintiff's claims raise constitutional issues, those issues are secondary to the relief he seeks, both in this action and in her MSPB appeal: reinstatement, back pay, and attorneys' fees.

Nor do Plaintiff's claims that his removal violated the Constitution, the First or Fifth Amendments change that conclusion. *Elgin* explained, "the MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's First or Fourth Amendment rights." *Id.* at 12. "[T]hese claims must be brought within the CSRA scheme." *Id.* (*citing Smith v. Dep't of Transp.,* 106 M.S.P.R. 59, 78–79 (2007) (applying *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563 (1968), to an employee's First Amendment retaliation claim); *Garrison v. Dep't of Justice,* 67 M.S.P.R. 154 (1995) (considering whether an employee drug test requirement was reasonable under the Fourth Amendment)). Thus, Plaintiff's claims are not "wholly collateral" to the types of claims that the CSRA intended to be heard by the MSPB.

**3. Plaintiff's Claims Present Issues that Are Well Within the MSPB's Expertise**.

Likewise, Plaintiff's removal challenge is one well within the MSBP's expertise. Removal challenges are at the core of the MSPB's day-to-day functions. Even if Plaintiff has correctly assumed that the government's defense to his removal appeal may challenge the constitutionality of the CSRA to the extent it infringes on the power of the Executive, the Supreme Court has already held that even claims raising constitutional issues beyond the purview of the MSPB are subject to administrative adjudication in the first instance so that the MSPB may bring its expertise to bear on the "threshold issues" relating to the employment claim. *Elgin*, 510 U.S. at 22-23. This is particularly true where, as here, the claims involve a statute that the MSPB routinely considers. *Id.* at 23. It is beyond cavil that the MSPB "routinely considers" the CSRA. *Id.*

Under the *Thunder Basin* factors, Plaintiff's claims are the type Congress intended to be channeled through the CSRA framework and are thus outside district court jurisdiction.

***C. Plaintiff's Damages Claims Under the Constitution Fail Due to Sovereign Immunity.***

Each of Plaintiff's constitutional claims seek "declaratory relief, reinstatement, an award of backpay, and any other available damages." [Doc. 1 ¶¶ 128, 136, 157,]. It is well settled that Plaintiff cannot maintain suits for damages against the United States or its agencies and officials, as absent a waiver the claims are barred by sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 486 (1994); *see also Bishins v. United States Sec'y of Health & Hum. Servs.*, No. 24-10008, 2025 WL 2080887, at *7 (11th Cir. July 24, 2025); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998); *Ivey v. Paulson*, 222 F. App'x 815, 820 (11th Cir. 2007).

***D. Plaintiff's APA Claim is Unavailable.***

Plaintiff is cannot utilize the APA to obtain judicial review where it is precluded by a separate statutory framework. *See* 5 U.S.C. § 701(a); *Perez v. U.S. Bureau of Citizenship &*

*Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014) (recognizing that the APA "expressly excepts review under its provisions where 'statutes preclude judicial review,' " or "agency action is committed to agency discretion by law") (*citing* 5 U.S.C. § 701(a)). The Eleventh Circuit has long held that remedies are unavailable under the APA where the CSRA applies. *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1575 (11th Cir. 1990); *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998); *Walker v. Sec'y of the Army*, 2024 WL 4635382, at *2 (11th Cir. Oct. 31, 2024); *Walker v. Sec'y of the Army*, 2024 WL 4635382, at *2 (11th Cir. Oct. 31, 2024) ("[E]ven if a plaintiff challenges an agency's failure to follow its own rules instead of the adverse action itself, as Walker does here, a plaintiff cannot run an end-around the statute's requirements simply by reframing the complaint."); *see also Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("Federal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions.").

Further, even if this Court permits Plaintiff's claims to proceed, the availability of remedies—particularly under the Privacy Act—foreclose review under the APA. The APA provides, "Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added); see also *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'") (*quoting El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.,* 396 F.3d 1265, 1272 (D.C.Cir.2005)).

## II. The CSRA Preempts Plaintiff's Privacy Act Claims, and Alternatively Plaintiff Has Failed to Plead a Cognizable Privacy Act Claim.

While the channeling analysis applies generally to Plaintiff's Privacy Act claim, several additional considerations must be addressed, as both the CSRA and Privacy Act are creatures of

federal statute, and the CSRA does not universally preempt all Privacy Act claims. However, as will be demonstrated herein, Plaintiff's Privacy Act claims in Count IV are clearly preempted, and otherwise insufficiently pled.

***A. Statutory Framework***.

The Privacy Act establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information. *Fed. Aviation Admin. v. Cooper,* 566 U.S. 284, 287 (2012). The Privacy Act thus regulates the collection, maintenance, use, and dissemination of an individual's personal information by federal government agencies. *See* 5 U.S.C. § 552a(e). The Privacy Act applies only to agencies, which Congress defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the [federal] Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552a(a)(l) (incorporating 5 U.S.C. § 552(t)(l), which in turn incorporates 5 U.S.C. § 551(1)).

The form of civil relief authorized by the Privacy Act depends on the particular violation alleged. The Privacy Act authorizes courts to award monetary damages when the agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

*Id.* § 552a(g)(l)(C). Additionally, the Privacy Act authorizes courts to award monetary damages when the agency fails "to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." *Id.* § 552a(g)(l)(D), (g)(4). Section 552a(g)(l)(D) is thus described as the Privacy Act's "catchall" provision. *Dickv. Holder,*

67 F. Supp. 3d 167, 176-77 (D.D.C. 2014) (*quoting Cacho v. Chertoff,* No. 06-cv-00292, 2006 WL 3422548, at *4 (D.D.C. Nov. 28, 2006)).

***B. The CSRA Preempts Privacy Act Claims Arising from Adverse Personnel Decisions.***

In light of the CSRA's comprehensive and exclusive scheme to channel claims stemming from adverse personnel actions through the MSPB appeal process, courts have considered whether the preclusive effect applies to employees raising Privacy Act claims which stem from adverse personnel actions. While the Eleventh Circuit has not expressly ruled on this interplay, other circuits considering this question have answered emphatically that the CSRA preempts the Privacy Act in matters concerning adverse personnel decisions. Further, the Eleventh Circuit has held that the Privacy Act is preempted in the context of Veteran's Administration benefits decisions under 38 U.S.C. § 211(a). *Pellerin v. Veterans Admin. of U.S. Gov't*, 790 F.2d 1553, 1555 (11th Cir. 1986). Finally, while the D.C. Circuit has taken a narrower view of the CSRA's preclusive effect on employment-related Privacy Act claims than other circuits, its decisions adopting this approach pre-date *Elgin*, and even under its approach, Plaintiff's claims are precluded. Defendants request that this Court take the approached espoused by most of surveyed courts *infra*, and further assert that the Eleventh Circuit would likely uphold that approach as evidenced by its stance in *Pellerin*.[6]

---

[6] A sizeable number of courts outside the D.C. Circuit have held that the question of CSRA preemption is one of subject matter jurisdiction. *See, e.g.*, *Henderson v. Soc. Sec. Admin.*, 908 F.2d 559, 560–61 (10th Cir. 1990)("We agree with the district court that the Privacy Act does not vest the court with jurisdiction to review personnel decisions where the Civil Service Reform Act precludes such review"); *Walia v. Holder*, 59 F. Supp. 3d 492, 508 (E.D.N.Y. 2014) ("However, as this claim is governed by the Civil Service Reform Act ("CSRA") rather than the Privacy Act, the Court is without subject matter jurisdiction to entertain it."); *Carlson v. United States*, 2019 WL 2602259, at *2 (W.D. Wash. June 25, 2019); *Johnson v. United States Air Force*, 2026 WL 2594500, at *5 (W.D. Ark. Sept. 2, 2026); *Washburn v. U.S. Off. of Pers. Management*, 2023 WL 2478160, at *5 (D.D.C. Mar. 11, 2023) ("This Court lacks jurisdiction over her statutory claims, and so it will dismiss them") (Court finding CSRA preclusion of APA and Privacy Act claims left it without jurisdiction); *but see Jackson v. Kennedy*, 2026 WL 172440, at *8 (D.D.C. Jan. 22, 2026).

**1. Courts Taking a Broad View of CSRA Preemption.**

The First Circuit, Second, Third, Ninth and Tenth Circuits have broadly held that the CSRA preempts Privacy Act claims that target adverse personnel actions, as exemplified by *Houlihan v. Off. of Pers. Mgmt.*, 909 F.2d 383 (9th Cir. 1990). In *Houlihan*, the plaintiff challenged the destruction of her classification specialist's notes that resulted in an adverse reclassification of her position. *Houlihan*, 909 F. 2d at 384. The plaintiff appealed within the OPM and requested all the documents that related to the adverse decision. *Id.* OPM upheld the reclassification and was unable to turn over the destroyed notes. *Id*. Rather than raise an appeal to the MSPB or OSC, the plaintiff filed claims in the District of Arizona alleging violations of the Privacy Act, CSRA and APA. *Id.* Affirming the District Court's decision against her, the Ninth Circuit flatly rejected plaintiff's attempts to pursue her Privacy Act claims:

> In order to consider Houlihan's Privacy Act claim, we would have to decide not only whether OPM violated the Act, but whether OPM's alleged violation caused it to make "a determination ... which is adverse to [her]." As in *Rosen,* we would have to compare OPM's decision to the decision it would have made had the agency properly maintained its records, assuming there indeed was a Privacy Act violation. This would necessitate a careful review of the OPM's decision to reclassify Houlihan, a review that our decision in *Karamanos* precludes.
>
> Were we to permit Houlihan's Privacy Act claim, we "would open the back door to judicial review to perhaps an overwhelming number" of CSRA claims, frustrating Congress's decision to assign to the OSC the task of policing alleged prohibited personnel practices. ***A disgruntled federal employee would need only to argue that her employer failed to comply with the Privacy Act to obtain judicial review of an employment decision.*** Because this result would be squarely at odds with the CSRA's statutory scheme, we affirm the district court's decision not to permit Houlihan to proceed with her Privacy Act claim.

*Id.* at 386 (emphasis added) (internal citations omitted) (*quoting* 5 U.S.C. § 552a(g)(1)(C); *Rosen v. Walters,* 719 F.2d 1422, 1423–25 (9th Cir.1983)).

The other Circuits ruling on this issue above have followed similar suit. *Vessella v. Dep't of Air Force*, 995 F.2d 1061 (1st Cir. 1993) (citations omitted) (unpublished opinion). *See also*

*Bailey v. DeJoy*, 2023 WL 1767141, at *23 (D. Me. Feb. 3, 2023); *Doe v. F.D.I.C.*, 545 F. App'x 6, 8 (2d Cir. 2013); *Walia v. Holder*, 59 F. Supp. 3d 492, 509 (E.D.N.Y. 2014) (Information alleged to have been improperly maintained and leading to an adverse personnel decision were properly the subject of the CSRA, not the Privacy Act); *Yu v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181, 184 (3d Cir. 2013) (*citing Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 795 (3d Cir.2003); *Kleiman v. Dep't of Energy,* 956 F.2d 335, 337–38 (D.C.Cir.1992)); *Henderson v. Soc. Sec. Admin.*, 908 F.2d 559, 560–61 (10th Cir. 1990) (*citing Blevins v. Plummer,* 613 F.2d 767, 768 (9th Cir.1980) (per curiam).

**2. The Eleventh Circuit.**

As noted above, the Eleventh Circuit's decision in *Pellerin* has been frequently cited for its analysis in barring a Privacy Act claim concerning a similar statutory framework to the CSRA. *Pellerin*, 790 F.2d at 1555 (11th Cir. 1986). The *Pellerin* Court joined the Ninth Circuit's rationale in *Rosen v. Walters,* 719 F.2d 1422 (9th Cir.1983), agreeing that Veteran's Administration benefits decisions were not subject to collateral attacks under the Privacy Act: "[i]f Pellerin believes that he is entitled to additional disability benefits, he can—and should—challenge the agency's determinations by utilizing the proper procedures. We agree with the district court, however, that he cannot use the Privacy Act to mount such a challenge." *Id.*

District Courts in this Circuit have since cited *Pellerin* as support for holding that Privacy Act claims are similarly precluded by the CSRA. *See Wonders v. McHugh*, 2013 WL 1729928, at *6 (M.D. Ala. Apr. 4, 2013), *report and recommendation adopted*, 2013 WL 1730319 (M.D. Ala. Apr. 22, 2013) ("Plaintiff's inferred assertion that Defendants retaliated against him after Defendant [] placed these inaccurate statements on the Public Drive is no more than a challenge to a prohibited personnel action as defined by the Privacy Act. First, the conduct that Plaintiff

alleges falls within a number of the CSRA's definitions of "personnel action" . . . [g]iven this broad language, the Court concludes that Plaintiff's Privacy Act claims complain about "personnel actions" within the meaning of the CSRA."); *Semmes v. United States*, 2009 WL 10688451, at *5 (N.D. Ala. Mar. 31, 2009) ("[T]he clear weight of authority holds that CSRA forecloses a federal employee from bringing a Privacy Act claim against a federal government entity for matters related to employment.") (*citing Pellerin*; *Lee v. Geren*, 480 F. Supp. 2d 198, 203-06 (D.D.C. 2007)); *see also McDowell v. Cheney*, 718 F. Supp. 1531, 1543 (M.D. Ga. 1989) (Privacy Act claim involving a nonconstitutional claim was precluded by CSRA); *Todd v. Holder*, 872 F. Supp. 2d 1284, 1288 (N.D. Ala. 2012) ("As such, Title VII's and the CSRA's exclusivity prevents Todd from invoking or relying on any federal statutory or constitutional provisions or theories in support of her claims of discrimination except those available under Title VII.").

**3. The D.C. Circuit**.

The D.C. Circuit deviates from the other circuits in its application of the general principals above. In *Lee*, the district court surveyed many of the cases above noting the broad exclusionary power afforded to the CSRA, but underscored the difference in approach by its own Circuit:

> The court opined that the plaintiff "really allege[d] only a wrongful personnel decision" in the guise of a subsection (g)(1)(C) action. But it held that the "bad fit between the facts asserted by Hubbard and a colorable Privacy Act claim is revealed by Hubbard's *failure to demonstrate the required causal link* between the passover document and his failure to obtain employment." In other words, the Court of Appeals reached the merits of the claim and then narrowly construed an element of that claim (causation) to avoid conflict with the CSRA.

*Lee v. Geren*, 480 F. Supp. 2d 198, 205 (D.D.C. 2007) (*quoting Hubbard v. U.S. Envtl. Prot. Agency, Adm'r,* 809 F.2d 1 (D.C.Cir.1986) (emphasis in original)(internal citations omitted). The *Lee* court then proceeded to outline that this approach was reiterated in a subsequent *Kleiman*:

> This approach was repeated in *Kleiman*[]. The plaintiff in *Kleiman* argued that his job title was listed inaccurately in personnel records because his actual work

> assignments corresponded to a different job title at a higher pay grade. The Court of Appeals considered Kleiman's Privacy Act amendment claim a "collateral attack on the original [job classification] personnel decision" that, if successful, would "bypass[] the 'exhaustive remedial scheme' provided by Congress" in the CSRA. The actual holding of the case, however, hinged on the court's analysis of the accuracy element of the claim.

*Lee,* 480 F. Supp. 2d at 205 (*quoting Kleiman v. Dep't of Energy,* 956 F.2d 335 (D.C.Cir.1992) (internal citations omitted). More recent D.C. circuit district courts have affirmed the interpretation and application of *Hubbard* and *Kleinman* as outlined by *Lee*. *See, e.g.*, *Jackson v. Kennedy*, 2026 WL 172440, at *10 (D.D.C. Jan. 22, 2026). Thus, analyzed within the D.C. Circuit's framework, a Privacy Act claim is not precluded by the CSRA if the plaintiff shows an inaccurate or incomplete record that actually caused the adverse personnel decision. *Id.*; *Gerlich v. U.S. Dep't of Just.*, 659 F. Supp. 2d 1, 15 (D.D.C. 2009).

### *C. Because Plaintiff Is Challenging a Personnel Decision, the CSRA's Exclusive Remedy Scheme Preempts his Privacy Act Claims.*

#### 1. The Weight of Authority Mandates Preemption of the Privacy Act Where the Claim Challenges a Personnel Decision under the CSRA.

Plaintiff's Privacy Act claim is plainly a challenge to his removal, a personnel decision. Plaintiff believes he was removed as an AUSA because officials within the DOJ were tagged in social media posts accusing him of being a "Trump hater" and linking blog posts critical of President Trump. [Doc. 1 ¶ 40, 52, 144 – 148]. He alleges that the DOJ improperly removed him because of his protected speech and violated the Privacy Act, as to the extent those "records" "imputed disloyalty, misconduct, or unfitness to Mr. Rosenzweig, they were inaccurate and incomplete." [Doc. 1 ¶ 147]. Irrespective of the merits of Plaintiff's claims or the appropriateness of the government's alleged conduct, Plaintiff is indisputably challenging the judgments of senior officials in the DOJ and the then-Attorney General herself. The Privacy Act does not extend to such challenges in the face of the CSRA:

> The Privacy Act allows for the amendment of factual or historical errors. It is not, however, a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies. [] *Moreover, it may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions.*

*Pellerin v. Veterans Admin. of U.S. Gov't*, 790 F.2d 1553, 1555 (11th Cir. 1986) (citations omitted) (emphasis in original). *See also Wonders v. McHugh*, 2013 WL 1729928, at *6 (M.D. Ala. Apr. 4, 2013), *report and recommendation adopted*, 2013 WL 1730319 (M.D. Ala. Apr. 22, 2013) ("Plaintiff's inferred assertion that Defendants retaliated against him after Defendant [] placed these inaccurate statements on the Public Drive is no more than a challenge to a prohibited personnel action as defined by the Privacy Act.").

Plaintiff is not directly challenging the accuracy or completeness of any supposed records—he is contesting the judgment of officials and the inference that his blog posts portrayed him as disloyal or unfit for service as an AUSA. [Doc. 1 ¶ 148]. Under the Eleventh Circuit's rationale in *Pellerin*, as well as that of the First, Second, Third, Ninth and Tenth Circuits, the analysis stops here. This Court lacks jurisdiction to entertain Plaintiff's Privacy Act claim—it is nothing more than a repackaged attack on his removal, which falls within the CSRA.[7]

### 2. Plaintiff's Privacy Act Claims Fail under *Hubbard* and *Kleiman*.

Even under the narrower statutory interpretive framework of the D.C. Circuit, Plaintiff's claims fail.[8] *Hubbard*'s analytical approach attempts to resolve the friction between the CSRA and

---

[7] Plaintiff's reliance on § 552a(e)(7) in addition to subpart (e)(5) provides no avenue for escape, as will be discussed in Section II.D.3, *infra*.

[8] Defendants offer this analysis *arguendo*, as the interpretative framework utilized by the D.C. Circuit runs contrary to established Supreme Court precedent, the majority of other Circuits, and arguably the Eleventh Circuit's holding in *Pellerin*. Indeed, it appears to run contrary to the acknowledged purpose of the CSRA, which is to create a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto,* 484 U.S. 439, 455 (1988). Given the reach of the CSRA as established by *Fausto* and *Elgin*, which purport to channel constitutional violations and challenges to statutes, the test espoused by *Hubbard* and *Kleiman* unduly elevates the Privacy Act while re-writing its terms to make it

Privacy Act by evaluating a claim on the merits. Under its approach, Courts should determine whether a harm was "actually caused" by "an inaccurate or incomplete record," but the Privacy Act does not otherwise "shield [federal] employees from the vicissitudes of federal personnel management decisions." *Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1, 5 (D.C. Cir. 1986), *on reh'g sub nom. Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988). In *Hubbard*, plaintiff believed that Beeson, an interviewing superior, had discussed the particulars of a related drug investigation with the press, and as a result decided not to hire him. *Id.* at 5. Beeson then created a "passover" document memorializing the decision, which in turn was a part of the record before the OPM, when Hubbard appealed the decision. *Id.* at 6. The OPM rejected his appeal, and Hubbard contended that Beeson had violated the Privacy Act by creating the passover document that was subsequently reviewed by OPM. *Id*. The *Hubbard* Court disagreed, noting that "nowhere in the record, nor, for that matter, in appellant's brief, does Hubbard put forward any facts that indicate but for inaccuracies in the passover document, OPM would have ruled in his favor." *Id.* Thus, under *Hubbard*, causation of the harm is the key component in determining which statutory scheme applies.

In *Kleiman*, the D.C. Circuit considered a second facet of its attempt to reconcile the CSRA and the Privacy Act—the *accuracy* of the offending record. There, the plaintiff sued the Department of Energy alleging that he had been improperly given a title for his job position that did not accurately reflect the actual work he was performing. *Kleiman*, 956 F.2d at 336 (D.C. Cir. 1992). The result of the improper titling/job classification, as plaintiff alleged, was that he could not find satisfactory post-governmental work. *Id.* Thus, plaintiff argued the government violated the Privacy Act by maintaining an inaccurate personnel file. *Id.* at 337. The D.C. Circuit disagreed,

---

"fit" with the CSRA. Defendants respectfully disagree and urge this Court to reject this approach, in favor of judicial restraint and allowing the framework Congress imposed in the CSRA to stand unimpeded.

and ruled that the CSRA was the proper vehicle, if there was one, to bring his claims, because Kleiman had not demonstrated that the government kept an inaccurate record. *Id.* Courts following D.C. Circuit precedent therefore evaluate claims for causation and the accuracy of the offending records to determine the preemption of the CSRA. *Jackson v. Kennedy*, 2026 WL 172440, at *7 - 8 (D.D.C. Jan. 22, 2026) (discussing the interplay between the CSRA and Privacy Act in view of *Hubbard* and *Kleiman*).

Here, Plaintiff cannot satisfy either test. Under *Hubbard*, Plaintiff cannot establish a causal link between an offending record and a resulting personnel action.[9] In *Hubbard*, the plaintiff discovered the offending "passover" document during his administrative proceeding challenging the government's decision not to hire him, and ultimately the OPM's reliance on that document in rejecting his appeal. *Hubbard*, 809 F.2d at 5. Here, Plaintiff fails to adequately identify a document or record created by the government that allegedly caused his removal. Instead, he speculates that third-party social media posts—tagging government official's social media handles—were stored and/or shared by an unknown combination of Defendants.[10] [Doc. 1 ¶¶ 40, 52, 144 – 148]. Plaintiff does not provide any authority for the proposition that tagging a government official's social media handle signifies the post was created or maintained as a record, nor does it imply action, reliance

[9] As noted below under the *Kleiman* analysis, Plaintiff does not seem to identify an inaccurate document, only that the perception of him as "disloyal" could be considered "inaccurate" or "incomplete."

[10] There is no allegation that Plaintiff initiated a FOIA request for the alleged offending records or otherwise exhausted his administrative remedies to identify whether such records actually exist. *See, e.g., Bailey v. DeJoy*, No. 1:20-CV-00042-JAW, 2023 WL 1767141, at *24 (D. Me. Feb. 3, 2023) ("[Plaintiff] has not exhausted her administrative remedies, as the law requires claimants to do under the Privacy Act. . . . [Plaintiff] did not submit a Privacy Act request in writing requesting access or amendment to her performance evaluation in accordance with USPS's procedures. Because she has not administratively exhausted either her access or alteration claims, the Court must grant summary judgment against these claims.") (internal citations omitted); *Komeili Birjandee v. United States Env't Prot. Agency*, 2026 WL 2363426, at *8 (D. Md. Aug. 14, 2026) (Request for amendment of supposedly erroneous records necessary predicate to raise plaintiff's Privacy Act claim).

or endorsement of the opinions stated therein. *See Colley v. James*, 254 F. Supp. 3d 45, 67 (D.D.C. 2017) ("Under the Privacy Act, opinions do not constitute "inaccurate" information.") (*citing Allmon v. Fed. Bureau of Prisons*, 605 F.Supp.2d 1, 7 (D.D.C. 2009)); *Hass v. U.S. Air Force*, 848 F. Supp. 926, 931–32 (D. Kan. 1994) ("The Privacy Act contemplates claims in which information is recorded inaccurately and that inaccuracy leads to an adverse determination. The Privacy Act was not meant to be a vehicle for litigating the truthfulness of the underlying information contained in an accurately recorded document.") (*citing Hubbard*).

The government's alleged reliance on social media posts is more akin to the plaintiff's allegations in *Hubbard*, that Beeson relied on information gathered from speaking with media regarding his drug investigation, which in turn allegedly led Beeson to turn down Hubbard's application. *Id.* at 6 n.8 ("Hubbard claims that Beeson used information derived from his conversation with reporter Kiernan to reject Hubbard and failed to ask Hubbard about press leaks before rejecting his application. These allegations, however, do not make out a section 552a(e)(2) violation. The Act does not forbid Beeson from using relevant information from third parties in the hiring decision . . ."). In short, Plaintiff cannot point to any particular record that "actually caused" his removal. All he can allege is that social media influencers tagged government official accounts and then posted follow ups that implied that the government took action based on the disclosure of Plaintiff's blog. Without more, Plaintiff cannot make out a plausible claim under the Privacy Act that an inaccurate document "actually caused" his removal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Plaintiff's case under *Kleiman*'s analysis fares worse still. At bottom, Plaintiff alleges the DOJ removed him after considering content that he wrote (his blogs). [Doc. 1 ¶¶ 40, 57, 148]. Plaintiff alleges this violated his First Amendment rights: "Plaintiff Will Rosenzweig brings this action to challenge his termination by the Department of Justice for a blog he published as a private citizen before he entered government service." *Id.* at 2. Plaintiff is not claiming that the government received forged blog entries or statements falsely attributed to him—he readily admits that he wrote blogs critical of President Trump. *Id.* ¶ 40, 57. At best, he challenges the characterization of the blogs and the opinions expressed by social media influencers, and the judgment of government officials to remove him. *Id.* ¶ 147. This plainly fails as a Privacy Act claim. *See Kleiman*, 956 F.2d at 337–38 ("The Privacy Act allows for amendment of factual or historical errors. It is not, however, a vehicle for amending the *judgments* of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies.") (*quoting Rogers v. United States Dep't of Labor,* 607 F.Supp. 697, 699 (N.D.Cal.1985) (emphasis in original); *Colley v. James*, 254 F. Supp. 3d 45, 67 (D.D.C. 2017) (Opinions are not inaccurate records under the Privacy Act). Doe v. DOJ, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) ("[P]laintiff's complaint objects to inaccurate 'conclusions drawn by lay employees' that were based on accurate records. . . . Thus, plaintiff objects not to erroneous . . . records but to misinterpretation of the records by DOJ employees, for which there is no remedy under the Privacy Act.")

**3. Plaintiff's Claim Under § 552a(e)(7) Fails**.

Finally, Count IV looks to 5 U.S.C. § 552a(e)(7) to find quarter where there is none to be found. Section 552a(e)(7) provides:

> Each agency that maintains a system of records shall -- **(7)** maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record

> is maintained or unless pertinent to and within the scope of an authorized law enforcement activity . . .

*Id.* Plaintiff alleges that "DOJ maintained, used, created, compiled, disseminated, or collected one or more records describing that First Amendment activity and the political views DOJ perceived from it, including material gathered from the internet, communications transmitting that material to DOJ decisionmakers, and derogatory information associated with the decision to remove him." [Doc. 1 ¶ 144]. The Government relied on these "records" in its decision to remove him. *Id.* ¶ 146. The CSRA preempts Plaintiff's § 552a(e)(7) claim.

Few courts have directly considered the effect of the CSRA on Privacy Act claims brought under § 552a(e)(7), but most have sided with CSRA preemption. For example, in *Biasco*, the plaintiff argued that the government violated that section by creating a declaration based off a photo taken of him at a restaurant and subsequent questioning about the event. *Biasco v. Dep't of Homeland Sec.*, 2022 WL 4796992, at *1 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 4752950 (W.D. Wash. Oct. 3, 2022). On a motion to dismiss, the Court agreed with defendants that such a Privacy Act claim was clearly preempted under the CSRA. *Id.* at *3 ("If the challenged conduct falls within this scope, 'then the CSRA's administrative procedures are the employee's only remedy.'") (*quoting Mangano v. United States*, 529 F.3d 1243, 1246-47 (9th Cir. 2008)).

In another case, *Joslin v. U.S. Dep't of the Interior,* the District Court underscored that the analysis must focus on whether the Privacy Act claim attempts to challenge a personnel decision covered by the CSRA. *Joslin v. U.S. Dep't of the Interior*, 2026 WL 1707794, (E.D. Cal. June 12, 2026). In *Joslin*, the plaintiff was a biologist working for the National Park Service at Yosemite National Park and participated with a group to fly a trans pride flag on the face of El Capitan, an iconic cliffside at the Park. *Id.* at *1. The Park began an investigation that eventually resulted in

plaintiff's termination. *Id.* Plaintiff sued and claimed that the government violated § 552a(e)(7) by collecting and maintaining records of how plaintiff exercised her First Amendment rights, and caused harm by "chilling their constitutional rights." *Id.* at *9. Because plaintiff was not using the Privacy Act to challenge her termination, the District Court thus concluded her claim was not precluded under the CSRA:

> The "harm," in other words, was not the termination or some other employment matter listed in the CSRA, but rather the more general chilling effect of the collection itself. Joslin's allegations do not imply that resolving their Privacy Act claim will entail any investigation of a decision that this Court is bound not to second-guess under the CSRA, so the Circuit's opinion in *Houlihan* does not show that the CSRA is preclusive.

*Id.* (internal citations omitted) (referring to *Houlihan v. Office of Personnel Management*, 909 F.2d 383 (9th Cir. 1990)).

Finally, in *Gerlich*, the plaintiffs were applicants for the Attorney General's Honors Program, a competitive process for placement in positions for recent law school graduates. *Gerlich v. U.S. Dep't of Just.*, 659 F. Supp. 2d 1, 4 (D.D.C. 2009). During the hiring process, several qualified candidates applied for positions and were selected for interviews but were then rejected by the Screening Committee based on their political affiliations. *Id.* at *5-6. The OIG and OPR investigated and issued a report, disclosing that members of the Screening Committee conducted internet searches regarding the applicant's "political and ideological affiliations, printed out such information when it revealed liberal associations and then attached the printouts and her own handwritten comments to the candidates' applications in support of her recommendations to deselect them." *Id.* These records only existed in hard copy and were destroyed before the initiation of the OIG/OPR investigation. *Id.* The plaintiffs sued, raising numerous claims including a claim under § 552a(e)(7) of the Privacy Act. *Id.* at * 13. The Defendants challenged the claim, arguing

that it was foreclosed by the CSRA. *Id.* at *14. The District Court analyzed the claim under the tests enumerated by *Hubbard* and *Kleinman*, and ultimately concluded that the plaintiffs had successfully alleged that the collected records were a but-for cause of their adverse action, *i.e.* not being selected. *Id.* at *15. However, while the District Court denied defendants' motion at that juncture, it did not settle the issue, and instead noted that "[t]he Court is, however, mindful of the tension that often exists between the CSRA and the Privacy Act, and it may be necessary to revisit the preemption issue following discovery." *Id.*

Here, Plaintiff's Privacy Act claim, to the extent travelling under § 552a(e)(7), is clearly preempted by the CSRA because it directly challenges a personnel decision. [Doc. 1 ¶ 146] ("DOJ relied on that record in deciding to remove Mr. Rosenzweig. Its maintenance and use of the record proximately caused a determination adverse to him, namely his summary removal from federal service."). Unlike the plaintiff in *Joslin*, here Plaintiff is not alleging a harm that is separate and distinct from his removal. *See also Houlihan v. Off. of Pers. Mgmt.,* 909 F.2d 383, 385 (9th Cir. 1990) (internal citations omitted) (reference to *Pellerin v. Veterans Admin. of U.S. Gov't*, 790 F.2d 1553, 1555 (11th Cir. 1986)).

Plaintiff may rely on *Gerlich* to belay the above result, but this Court should not be persuaded. First, unlike in *Gerlich*, here Plaintiff has not identified specific records that were collected or maintained by the Defendants. Plaintiff simply displays screenshots of social media posts tagging various DOJ officials and avers that the timing of the posts and the poster's unverified claims coincide with Plaintiff's removal. Plaintiff does not have knowledge of who, if anyone, even saw the posts, much less the officials alleged to be responsible for Plaintiff's removal. There is no allegation that the officials interacted with the posts, by liking or commenting on

them.[11] While Plaintiff alleges an unnamed supervisor told Plaintiff that US Attorney Quinones had a discussion with the Deputy Attorney General about the blogs, there is no allegation that they had viewed them or from where they were obtained. By contrast, in *Gerlich* the OIG/OPR report clearly outlined how Screening Committee officials had searched for applicant's political affiliations online, made printouts of the information, made further notes on those printouts, and eventually relied on them to decline positions to perceived unfavorable applicants. *Gerlich*, 659 F. Supp. 2d at 5 – 6.

Second, it is entirely unclear how the test espoused by *Hubbard* and *Kleiman* applies to § 552a(e)(7), which by its own terms does not imply liability based on the accuracy or completeness of an offending record. *See Jackson v. Kennedy*, 2026 WL 172440, at *8 (D.D.C. Jan. 22, 2026) ("As [*Hubbard*] explained, 'the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action *actually caused* by an ***inaccurate or incomplete*** record,' but it does not otherwise 'shield [federal] employees from the vicissitudes of federal personnel management decisions' not caused by an erroneous record.") (*quoting Hubbard v. U.S. Envtl. Prot. Agency, Adm'r*, 809 F.2d 1 (D.C. Cir. 1986) (emphasis added)). *Gerlich* does not offer any explanation as to how 552a(e)(7) fits within this rubric, nor did it discuss whether the records before it contained inaccuracies. Moreover, under *Hubbard* and *Kleiman*, claims directed to personnel decisions, even if alleged to infringe on constitutional rights, cannot circumvent Congress' prerogative channel such claims with the CSRA. *See Hubbard*, 809 F.2d at 8 n.10 ("Hubbard's complaint does properly fall within the CSRA remedial system. . . . section 2302(b)(11) defines "prohibited personnel practice" to include actions that violate "any law ... directly concerning the merit system principles...." One such principle is that "applicants for employment should receive fair and

[11] Plaintiff speculates the posts could have been shared by the officials internally.

equitable treatment ... with proper regard for their ... constitutional rights." A [firing] decision that violates the first amendment would therefore be a "prohibited personnel practice.") (internal citations omitted) (*citing Bush,* 462 U.S. at 386) ("Constitutional challenges to agency action, such as the First Amendment claims raised by petitioner, are fully cognizable within [the CSRA] system.").

Finally, *Gerlich* cautiously permitted plaintiffs' claim to proceed but indicated "it may be necessary to revisit the preemption issue following discovery." *Gerlich*, 659 F.Supp.2d at 15. Was this because the Court realized that permitting the § 552a(e)(7) to proceed would invariably "open the back door to judicial review" of claims which otherwise would be precluded by the CSRA? We will never know. *See Gerlich V. United States Department Of Justice,* Case no. 1:08cv1134, [Dkt. 198] (Joint Dismissal with Prejudice). We do know that *Gerlich* does not stand against CSRA preemption of Plaintiff's claim here. *See, e.g.*, *Pellerin v. Veterans Admin. of U.S. Gov't*, 790 F.2d 1553, 1555 (11th Cir. 1986) ("The Privacy Act . . . is not, however, a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies. *Moreover, it may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions.*") (internal citations omitted) (emphasis in original); *Biasco* 2022 WL 4796992, at *1.

This Court should dismiss Count IV as it is precluded by the CSRA, and Plaintiff otherwise fails to state a claim under the Privacy Act for either §§552a(e)(5 or 552a(e)(7).

**CONCLUSION**

For all the reasons contained herein, this Court should dismiss Plaintiff Will Rosenzweig's Complaint for lack of subject matter jurisdiction, or alternatively for failure to state claim.

DATED this 16th day of November, 2026.

Respectfully submitted,

**GREGORY W. KEHOE**
United States Attorney for the Middle
District of Florida

By: */s/ Jonathan M. Weirich*
Jonathan M. Weirich
Assistant United States Attorney
Florida Bar No. 118961
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone No.: (239) 461-2238
Email: Jonathan.weirich@usdoj.gov
*Counsel for the Defendants*
*Acting Under Authority Conferred*
*by 28 U.S.C. § 515*

*/s/ Chad C. Spraker*
CHAD C. SPRAKER
Special Attorney
USA No. 198
2110 First Street, Ste. 3-137
Fort Myers, Florida 33901
Telephone: 239-461-2200
Fax: 239-461-2219
Email: chad.spraker@usdoj.gov
*Acting Under Authority Conferred by 28*
*U.S.C. § 515*